# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | | |
|---|---|---|
| DEBORAH LEE, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | CV 214-97 |
| HAROLD PAUL CHRISTIAN, | * | |
| individually and in his | * | |
| official capacity as County | * | |
| Manager of Pierce County, | * | |
| Georgia; CARL BOYETTE; TOMMY | * | |
| LOWMAN; TOM DAVIS, | * | |
| | * | |
| Defendants. | * | |

## ORDER

Presently before the Court is Defendant Harold Paul Christian's ("Christian") Motion for Summary Judgment (Dkt. No. 68). Further, Defendants Carl Boyette ("Boyette"), Tommy Lowman ("Lowman"), and Mayor Tom Davis ("Davis") have filed a joint Motion for Summary Judgment (Dkt. No. 69). The motions have been fully briefed and are ripe for decision. For the reasons stated below, both motions are **GRANTED IN PART AND DENIED IN PART.**

## FACTUAL BACKGROUND

Plaintiff Deborah Lee worked as the Director of the Pierce County Chamber of Commerce from June 1999 until February 2013. She lives in the City of Blackshear, Pierce County, Georgia,

with her husband of 28 years. Dkt. No. 21 ¶ 8. Defendants in this case are Christian, Pierce County Manager; Boyette, Pierce County Commissioner; Lowman, Director of the Pierce County Industrial Development Authority; and Davis, the former mayor of Blackshear. Dkt. No. 21 ¶¶ 10-13, 15.

Plaintiff started working for the Pierce County Chamber of Commerce in June 1999. Id. ¶ 14. According to her immediate supervisor, Plaintiff "served cheerfully and competently 100% of the time." Dkt. No. 78-3 ¶ 4. Defendant Christian became County Manager in August 2011. Dkt. No. 21 ¶ 15. From the time he began serving in that position, Defendant Christian became a routine visitor to Plaintiff's office. Id. ¶ 16. While visiting, Defendant Christian "was extremely friendly, helpful and encouraging." He "often discussed with [Plaintiff] ways in which the annual financial contribution of the county to the Chamber of Commerce could be increased." Id. ¶ 17.

Defendant Christian's conduct eventually began to take a more unwelcome turn. According to the Pierce County Commission Chairman, Defendant Christian started "stalking" Plaintiff. Dkt. No. 78-6 ¶ 4. Further, Plaintiff claims Christian began making sexualized comments to her. Plaintiff summarizes the nature of those comments in her declaration:

- Opinion about the provocative nature of [Plaintiff's] physical shape;

⊃72A
.ev. 8/82)

- Comments offering [Plaintiff] a higher salary in exchange for sexual favors;
- Ongoing requests that he and [Plaintiff] take out-of-town trips together at taxpayer expense;
- Promises to include the Chamber of Commerce in the Pierce County employment benefits program in exchange for sexual favors; and
- Promises to increase, and promises not to decrease, Pierce County's monthly contribution to the Chamber of Commerce in exchange for sexual favors.

Dkt. No. 78-1 ¶ 10. Plaintiff claims she became fearful of being alone with Defendant Christian and started to take steps to avoid that possibility. For example, Plaintiff claims she would lock her office door when she thought Defendant Christian might visit so that it would appear that she was not there. Dkt. No. 78-10 p. 43.

One day in June 2012, while Plaintiff was at the gym during lunch, Defendant Christian "forcibly and against [Plaintiff's] will, grabbed and turned [Plaintiff's] body and attempted to press his lips against her lips." Dkt. No. 78-1 ¶ 13. Plaintiff quickly turned her head so that the attempted kiss landed on her cheek. Plaintiff states that she had to "forcibly detach herself" from Defendant Christian. Id. Just after the encounter, Defendant Christian blew Plaintiff a kiss as he left the gym. Id. Conflicting reports of this event were given by Plaintiff's workout companion, Brandi King ("King"). King's 2012 affidavit confirmed Plaintiff's account that this event was "totally inappropriate" and that Defendant Christian "would have

Ɔ 72A
.ev. 8/82)

kissed her on the lips" had she not turned away. Dkt. 75-8 ¶ 4.
Further, King testified "[Christian] knew he had stepped over
the line." Id. On the other hand, her 2016 affidavit recalls
the event as a simple kiss on the cheek. Dkt. No. 68-13 ¶¶ 7,
9.[1] Another witness outside of the gym testified that
immediately afterwards, Plaintiff appeared like "something was
wrong with her" and that she was "shocked." Dkt. No. 78-7 ¶ 6.

The next day, Defendant Christian went to the Chamber of
Commerce and spoke with Plaintiff. Plaintiff claims Defendant
Christian apologized and said that Plaintiff was a nice-looking
woman, which accounted for his conduct the previous day at the
gym, which, according to him, was different from "sexual
harassment." Dkt. No. 75-10 p. 40. Plaintiff reported the
incident, as well as Defendant Christian's other advances, to
her supervisor, Jerry Dixon ("Dixon"). Dkt. No. 75-3 ¶¶ 5-7.

Plaintiff attests that she grew fearful of further
inappropriate conduct by Defendant Christian. She started
taking more extreme steps to avoid him, such as disassociating
from him at meetings and continuing to lock the office door when
she was there alone. Dkt. No 78-10 at pp. 40-43. Pierce County
Chairman Mitch Bowen expressed that he knew Plaintiff was

---

[1] The Court considers both affidavits when ruling on this motion. The
discrepancies between them would only affect the weight rather than the
admissibility of the evidence, if this case reaches a jury.

Ͻ 72A
.ev. 8/82)

locking her door because she feared Christian would come in. Id. ¶ 5.

Shortly after the encounter between Plaintiff and Defendant Christian at the gym, all of the Defendants attended multiple "secret" meetings every Monday. Dkt. No. 75-5 ¶ 9; Dkt. No. 75-6 ¶ 8. These meetings were considered secret because they were held without public notice. Some members of the County Commission were excluded. Dkt. No. 75-5 ¶ 9; Dkt. No. 75-6 ¶ 8. The agenda at these meetings is disputed, but during at least one of them, the Chamber of Commerce was discussed. Dkt. No. 75-5 ¶ 9.

Defendants Davis and Christian allegedly attempted to eliminate funding for the Chamber of Commerce in the County budget if Plaintiff was not discharged from her employment. Dkt. No. 78-5 ¶ 8. Defendants Davis and Christian spoke with the President of the Chamber of Commerce, and Plaintiff's supervisor, Dixon, and threatened to eliminate continued funding for the Chamber of Commerce, if the Chamber of Commerce did not discharge Plaintiff. Dkt. No. 78-15 pp. 20-24. Defendants Davis and Christian reportedly told Dixon they wanted to "get rid" of Plaintiff because her clothing was "inappropriate" and the type worn by a "stripper." Dkt. No. 78-6 ¶ 13; Dkt. No. 78-5 ¶ 10; Dkt. No. 68-6 p. 60. Dixon disagreed that Plaintiff's clothing was improper. Dkt. No. 75-3 ¶ 6. Eight months after

Ɔ 72A
ev. 8/82)

the incident at the gym, in February 2013, Plaintiff resigned. Dkt. No. 68-3 p. 1. Plaintiff alleges that she ultimately resigned due to the pressure and stress exerted by Defendants' actions, disparaging comments to co-workers, and attempts to harm her reputation in the community. Dkt. 78-10 p. 119.

## PROCEDURAL BACKGROUND

Plaintiff asserts claims of sexual battery and assault against Defendant Christian (Counts I and II). She brings claims of conspiracy to violate her civil rights under 42 U.S.C. § 1985(3) and tortious interference with employment contract against all defendants (Counts IV and III). She also seeks punitive damages and litigation expenses against all defendants (Counts V and VI). Her claims against Defendant Christian are brought against him in both his official and individual capacities; her claims against the other Defendants are against them in their individual capacities only. Dkt. No. 35 pp. 4-5. Plaintiff is no longer pursuing claims against Pierce County or Matthew Carter. The Court previously denied Defendants Davis, Lowman, and Boyette's Motion to Dismiss on March 30, 2015 (Dkt. No. 41).

## LEGAL STANDARD

Summary judgment is required where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

ɔ 72A
ev. 8/82)

Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute over such a fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In making this determination, the court is to view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257. The nonmovant may satisfy this burden in two ways: First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to

⊃72A
ev. 8/82)

withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex Corp., 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. Where the nonmovant instead attempts to carry this burden with nothing more "than a repetition of his conclusional allegations, summary judgment for the defendants [is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981).

## ANALYSIS

### A. Federal Claims

Plaintiff asserts her federal claims under 42 U.S.C. § 1985(3) ("Section 1985"), alleging a conspiracy to violate her civil rights. The elements of a civil rights conspiracy cause of action under Section 1985 are (1) a conspiracy; (2) for the purpose of depriving any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) injury. United Bd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott, 463 U.S. 825, 828-29 (1983). As part of the second element, there must be class-based "invidiously

ɔ 72A
.ev. 8/82)

discriminatory animus behind the conspirators' action." Id. (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)). "[W]omen are a 'class of persons' within the meaning of § 1985(3), and therefore are protected by that provision from conspiracies against them motivated by sex-based animus." Lyes v. City of Riviera Beach, 166 F.3d 1332, 1339 (11th Cir. 1999) (en banc).

### i. Plaintiff's Section 1985 Claims Against Defendants Davis and Christian[2]

Defendants Davis and Christian move for summary judgment on Plaintiff's Section 1985 claims, alleging that she has failed to establish a genuine issue of material fact. Specifically, they argue that Plaintiff has failed to show evidence of an agreement to conspire or evidence of discriminatory animus. Dkt. No. 69-1 pp. 6-8. The Court addresses each argument in turn.

"In order to establish a § 1985(3) conspiracy claim, [Plaintiff] must show an agreement between 'two or more persons' to deprive [her] of [her] civil rights." Dickerson v. Alachua Cty. Comm'n, 200 F. 3d 761, 767 (11th Cir. 2000). Plaintiff may survive summary judgment if she can present circumstantial evidence of an agreement to conspire. See United States v. Houser, 754 F.3d 1335, 1349 (11th Cir. 2014); see also Grider v.

---

[2] The Court notes that while Defendants Davis, Lowman, and Boyette have filed a joint motion, the evidence against Defendant Davis is more similar to that against Defendant Christian. Therefore, the Court addresses Plaintiff's claims against Defendants Davis and Christian together.

⊃72A
.ev. 8/82)

*City of Auburn*, 618 F.3d 1240, 1260 (11th Cir. 2010) ("Factual proof of the existence of a § 1983 conspiracy may be based on circumstantial evidence."). The Court finds that Plaintiff has established a genuine issue of material fact regarding an agreement to conspire in regards to Davis and Christian.

The record reflects that immediately after the kissing incident, Defendants held multiple "secret" meetings. Dkt. No. 78-6 ¶ 8; Dkt. No. 75-5 ¶ 7. There is evidence that these meetings may have ignored public-notice laws and excluded members of the Pierce County Commission. Dkt. 78-6 ¶ 8. At least one meeting involved Plaintiff's department as an agenda item. Dkt. 75-5 ¶ 7. Further, all Defendants had knowledge of the incident between Defendant Christian and Plaintiff. Dkt. 75-5 ¶¶ 9, 11. These meetings alone are insufficient to establish a factual question, because there is no evidence of what was actually discussed at those meetings. Davis and Christian's conduct outside of those meetings, however, reinforce Plaintiff's argument and creates an issue of material fact.

Specifically, Christian and Davis' meeting with Plaintiff's supervisor creates an issue of fact as to whether some agreement occurred. There is evidence that Davis and Christian approached Plaintiff's supervisor and requested that he fire Plaintiff. Dkt. 78-15 pp. 22-26. During this meeting, the two agreed that

ↄ 72A
.ev. 8/82)

"they felt like a male" needed to be in Plaintiff's position. Id. at 25. It was conveyed that Christian and Davis had an alleged co-conspirator in mind for her replacement, Tommy Lowman. Id. at 22.[3] Further, in this same meeting, Christian and Davis told Plaintiff's supervisor that his department would receive more funding from both the city and county if he replaced Plaintiff. Dkt No. 78-15 pp. 20-24.

Defendants argue that the "intracorporate conspiracy doctrine" requires that summary judgment be granted. Under this doctrine, if Defendants and the Plaintiff are all employees of the Pierce County government, then no agreement can exist, as Pierce County cannot conspire against itself. Dickerson, 200 F.3d at 768. Here, however, Defendant Mayor Davis was a member of a separate public entity from all other Defendants. Davis represented the City of Blackshear, whereas all other Defendants represented Pierce County. Furthermore, the intracorporate conspiracy doctrine does not apply if the alleged conspirators act outside of the scope of their employment. McMillan v. Dekalb Cty., No. 104-CV-3039, 2005 WL 5121856, at *5 (N.D. Ga. Feb. 15, 2005). Based on the comments made by Davis and Christian, there is a fact question regarding whether those two defendants were acting within the scope of their employment. Specifically, Davis and Christian's comments create a genuine

---

[3] The Court notes there is no evidence in the record that Davis and Christian had any discussion or agreement with Lowman about this arrangement.

⊃72A
.ev. 8/82)

issue of fact whether they were acting with discriminatory animus, rather than within the scope of their duties. Therefore, the intracorporate conspiracy doctrine does not apply here.

Davis and Christian also argue that Plaintiff's Section 1985 claim fails to show a deprivation of the equal protection of law. Dkt. No. 87 pp. 8-10. A Section 1985 claim may survive summary judgment if the Plaintiff establishes that Davis' and Christian's actions reflect gender-based "discriminatory animus." Burrell v. Bd. of Trs. of Ga. Military Coll., 970 F.2d 785, 788 (11th Cir. 1992).

Here, discovery has revealed a factual question regarding whether Davis and Christian's actions were taken against Plaintiff on the basis of her gender. The meetings between Defendants took place immediately after the kissing incident at the gym. Dkt. 78-6 ¶ 8; Dkt. 75-5 ¶ 7. Christian and Davis asked Plaintiff's supervisor to terminate her because "they felt like a male" was needed in Plaintiff's position. Dkt. 78-15 at 22:17-25. Further, in the same meeting, Davis and Christian referenced Plaintiff's "unprofessional" and "stripper"-like dress as the reason why she needed to be replaced. Id. at 43:16-19. Davis mentioned to another witness that Plaintiff's clothing was "too sexy" and that she dressed "like a hooker." Dkt. 78-4 ¶ 11. Christian stated Plaintiff was dressed like a

⊃ 72A
.ev. 8/82)

"tramp" and how her shoes made her "look like a stripper." Dkt. 75-6 ¶ 1. These statements create a genuine issue of material fact regarding Davis and Christian's alleged discriminatory intent. It is undisputed that Plaintiff has established the remaining elements of a Section 1985 claim.

Finally, Defendants allege that Plaintiff requires a "comparator" to prove discriminatory conduct. Dkt. 69-1 p. 4. This Court previously found that a comparator is only required in the absence of other evidence indicating discrimination. Dkt. No. 41 pp. 17-19 (citing Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997)). Specifically, if the record "presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker," summary judgment may be denied. Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011) (citation and internal quotation marks omitted). Here, the combination of secret meetings, discriminatory comments reported by third-party witnesses, and the meeting with Plaintiff's supervisor create a fact question sufficient for a jury to infer intentional discrimination. Thus, no comparator is necessary, as the record is supported by other evidence. Therefore, the Court will deny summary judgment as to Plaintiff's Section 1985 claim against Davis and Christian.

Ɔ 72A
.ev. 8/82)

### ii. Plaintiff's Section 1985 Claims Against Lowman and Boyette

Plaintiff's Section 1985 claims against Lowman and Boyette are a different matter. Unsupported speculation about what Lowman and Boyette said during the secret meetings is insufficient to survive summary judgment. Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2015) (citation omitted). Here, the record is devoid of evidence regarding Boyette's involvement, outside of the fact he was present during the secret meetings. Unlike Davis and Christian, Boyette took no actions in combination with those meetings that would create an issue of fact regarding whether he agreed to be a part of the conspiracy.

Plaintiff certainly need not provide a "smoking gun" showing an agreement between Boyette and the other Defendants. Arline v. City of Jacksonville, 359 F. Supp. 2d 1300, 1312 (M.D. Fla. 2005). Plaintiff, however, still must be able to provide some circumstantial evidence which shows that an agreement to conspire took place. See United States v. Houser, 754 F.3d 1338, 1349 (11th Cir. 2014) ("Factual proof of the existence of a § 1985 conspiracy may be based on circumstantial evidence."). Here, the sole evidence linking Boyette to the conspiracy is his presence at the aforementioned meetings. This by itself is an insufficient basis to create a genuine issue of material fact

⊃ 72A
.ev. 8/82)

regarding Boyette's agreement to conspire. See Terry Props., Inc. v. Std. Oil Co. (Ind.), 799 F.2d 1523, 1539 (11th Cir. 1986) (meetings alone insufficient to establish a Section 1985 claim when plaintiff failed to present evidence of discriminatory comments at those meetings). Furthermore, no evidence in the record exists linking Boyette to any gender-based prejudice. Therefore, the Court grants summary judgment as to the Section 1985 claim against Boyette.

The record is also devoid of facts that indicate that Lowman acted with any discriminatory animus. While Plaintiff points to a multitude of gender-based comments in the record, all of these are attributed to Davis and Christian. The record does reflect that Lowman had some dispute with Plaintiff regarding the travel budget in Pierce County and may not have cooperated well with her. Dkt. No. 78-7 ¶¶ 4-5. This dispute, however, occurred before the incident with Christian and the beginning of the secret meetings. Furthermore, mere evidence that Lowman and Plaintiff did not get along well is insufficient to establish a Section 1985 claim. Therefore, Plaintiff has failed to establish any evidence of gender-based animus on the part of Lowman.

Unlike Davis and Christian, there is insufficient evidence in the record to establish anything more than mere speculation as to Boyette and Lowman's alleged discriminatory conduct.

Ͻ 72A
.ev. 8/82)

Speculation is insufficient to survive a motion for summary judgment. Cordoba, 419 F.3d at 1181 (citation omitted). Thus, the Court will also grant summary judgment in regard to the Section 1985 claim against Lowman.

**B. State Law Claims**

**i.  Davis, Lowman, and Boyette's Official Immunity From State Law Claims**

Davis, Lowman, and Boyette claim that Plaintiff's state law claims against them in their individual capacities are barred by the doctrine of official immunity. According to the Georgia Constitution, "state officers and employees and those of its departments and agencies are subject to suit only when they negligently perform or fail to perform their 'ministerial functions' or when they act with actual malice or intent to cause injury in the performance of their 'official functions.'" Gilbert v. Richardson, 452 S.E.2d 476, 483 (Ga. 1994) (citing Ga. Const. art. I § 2 ¶ IX(d)). Actual malice requires a deliberate intention to do harm. Merrow v. Hawkins, 467 S.E.2d 336, 337 (Ga. 1996). The intent necessary for a showing of actual malice "must be the intent to cause the harm suffered by the plaintiffs." Murphy v. Bajjani, 647 S.E.2d 54, 60 (Ga. 2007). Therefore, Davis, Lowman, and Brown are entitled to official immunity in their individual capacities unless the record establishes a fact question regarding actual malice.

⊃ 72A
.ev. 8/82)

Here, Plaintiff presents numerous facts in support of her allegations of actual malice against Davis. The litany of comments about Plaintiff's appearance, as well as Defendant Davis' alleged push to have Plaintiff terminated, create an issue of fact regarding whether they intended to do harm. Thus, Davis is not protected by official immunity in his individual capacity.

Boyette and Lowman, however, retain immunity for the same reasons that Plaintiff's Section 1985 claims against them fail. Unlike Defendant Davis, no malicious comments and actions have been directly attributed to Boyette and Lowman. Further, simply pointing to the fact that these Defendants attended secret meetings, without more, is insufficient to establish actual malice. Thus, Defendants' Motion for Summary Judgment will be granted in regards to Boyette and Lowman, as they maintain official immunity in their individual capacities.

### ii. Defendant Christian's Sovereign Immunity

Unlike the other Defendants, Christian only claims sovereign immunity. Dkt. No. 68-1 pp. 11-12. Sovereign immunity differs from official immunity in that a government official is protected regardless of actual malice. Cameron v. Lang, 549 S.E.2d 341, 344-47 (Ga. 2001). Sovereign immunity, however, applies only to defendants sued in their official capacity, rather than their personal capacity. Gilbert, 452

Ͻ 72A
ev. 8/82)

S.E.2d at 483. Suits brought against public employees in their official capacity are considered suits against the governmental entity for which they are employed, and therefore are foreclosed. Cameron, 549 S.E.2d at 344-47. The Georgia Constitution applies sovereign immunity to "the state and all of its departments and agencies[.]" Ga. Const. arts. I § II ¶ IX(e). Under this provision, sovereign immunity "can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." Gilbert, 452 S.E.2d at 748. The General Assembly has explicitly extended this protection to county governments under O.C.G.A. Section 36-1-4. Plaintiff has not alleged that there has been any waiver of this immunity. Thus, sovereign immunity shields Christian in his official capacity. Sovereign immunity does not, however, grant him immunity in his personal capacity.

### iii. Plaintiff's Claims for Tortious Interference Against Defendants Davis and Christian

Davis and Christian also move for summary judgment regarding Plaintiff's tortious interference claims. The elements of a claim for tortious interference are:

> (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated

◌ 72A
.ev. 8/82)

business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

_Tidikis v. Network for Med. Commc'ns Research, LLC_, 619 S.E.2d 481, 486 (Ga. Ct. App. 2005) (citations omitted).

Defendants Davis and Christian contend that because their employers, the City of Blackshear and Pierce County, provided financial support to the Chamber of Commerce, they were privileged to interfere with Plaintiff's employment contract under the "stranger doctrine."

The stranger doctrine notes that "in order for a defendant to be liable for tortious interference with contractual relations, the defendant must be a stranger to both the contract _and_ the business relationship giving rise to and underpinning the contract." _Atlanta Mkt. Ctr. Mgmt. Co. v. McLane_, 503 S.E.2d 278, 283 (Ga. 1998) (emphasis in original) (citations omitted).

Plaintiff urges the Court to find that Davis and Christian's protections under the stranger doctrine fail due to evidence establishing an issue of fact regarding gender discrimination. Tortious interference, however, does not contemplate gender discrimination as the type of "interference" actionable under Georgia business tort law. _Weigand v. City of Perry_, No. 5:05-cv-392, 2008 WL 350975, at *6 (M.D. Ga. Feb. 7, 2008). The Court also notes that if acting with gender-based

つ 72A
ev. 8/82)

animus was an exception to the stranger doctrine, the malice element would essentially be redundant.

Instead, Georgia law prevents Davis and Christian from being strangers to a business relationship between Pierce County and Plaintiff if: (1) the defendant is an essential entity to the injured relations; (2) the allegedly injured relations are dependent upon the defendant's relations; (3) the defendant would benefit economically from the alleged injured relations; or (4) both the defendant and the plaintiff are parties to a comprehensive interwoven set of relations. Id. Both Davis and Christian had partial control over funding the Chamber of Commerce. Dkt. No. 78-5 ¶ 8. Furthermore, Davis (as County Manager) and Christian (as Mayor of Blackshear) both were integral parts of the series of relationships between Pierce County and the City of Blackshear. Plaintiff is certainly not without recourse for her gender discrimination claims, but her Section 1985 claim, not her tortious interference claim, is the proper framework. Weigand, 2008 WL 350975, at *6. Therefore, the Court will grant summary judgment regarding Plaintiff's tortious interference claims.

### iv. Plaintiff's Claim for Assault and Battery against Defendant Christian

Under Georgia law, a battery is an unlawful touching that would be offensive to a reasonable person. Ellison v. Burger

King Corp., 670 S.E.2d 469, 472-74 (Ga. Ct. App. 2008). An offensive touching is typically the result of anger, rudeness, or lust. Id. Under Georgia law, an assault is the apprehension of an imminent harmful or offensive contact. Capitol T.V. Serv., Inc. v. Derrick, 293 S.E.2d 724-25 (Ga. Ct. App. 1982). Assault and battery are typically considered together as a single claim, rather than as two separate claims. See Couch v. Red Roof Inns, Inc., 729 S.E.2d 378 (Ga. 2012). Regardless, Christian only disputes the offensiveness of his contact, not Plaintiff's apprehension of the kiss.

Here, Plaintiff has met her "low threshold" for establishing an assault and battery claim. Ellison, 670 S.E.2d at 472-74. While Christian frames the June 2012 incident as a simple peck on the cheek, the record reflects a material issue of fact as to whether it was more severe. Specifically, witness testimony indicates that Christian may have forcibly attempted to kiss Plaintiff's lips and only failed because Plaintiff turned away. Dkt. 78-8 ¶ 4. Further, an eyewitness found this conduct to be "totally inappropriate." Id. Another witness outside of the gym testified that immediately afterwards, Plaintiff appeared like "something was wrong with her" and was "shocked." Dkt. No. 78-7 ¶ 6. Plaintiff alleged the kiss itself left a string of "drool extending between [Christian's] lips and [Plaintiff's] face." Dkt. No. 78-1 ¶¶ 13-14.

⊃72A
ev. 8/82)

Christian himself may have even believed the conduct was inappropriate, because after the incident, he felt the need to apologize and explain that it was not "sexual harassment." Dkt. No. 78-10 p. 40.

Christian's primary opposition to Plaintiff's claim is that she framed her battery as criminal "sexual" battery in her Amended Complaint. Dkt. No. 68-1 p. 12. The Eleventh Circuit has held that a plaintiff cannot amend her complaint in a response to summary judgment. Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004). This rule only applies, however, if Christian was not put on notice that Plaintiff was alleging a battery claim. Id. This is not the case here. Christian should have reasonably inferred that her "sexual" battery claim was not a claim under the criminal statute, but instead, a civil battery claim.

Christian also appears to claim that he is entitled to immunity under the Georgia Tort Claims Act ("GTCA"). Dkt. No. p. 12. GTCA immunity from intentional tort claims, however, only applies if Christian was "acting in the course and scope of his employment" with Pierce County. Ridley v. Johns, 552 S.E.2d 853, 854-56 (Ga. 2001); Davis v. Standifer, 621 S.E.2d 852, 855-56 (Ga. Ct. App. 2005). The incident here did not occur within Christian's scope of employment. The kiss occurred outside of the workplace while Plaintiff and Christian were working out at

⊃ 72A·
ev. 8/82)

the gym. This was not pursuant to Christian's official duties with the County, or even during work hours.

Regardless, GTCA protections only extend to state, rather than county, officials. Crosby v. Johnson, 779 S.E.2d 446, 449 (Ga. Ct. App. 2015). Therefore, the record reflects that a genuine issue of material fact exists regarding Plaintiff's assault and battery claim. Thus, summary judgment will be denied.[4]

### v. Plaintiff's Claims for Punitive Damages

Finally, the Court addresses Defendants' argument that the Court must grant summary judgment on Plaintiff's claim for punitive damages and attorney's fees. "Punitive damages may be awarded in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(d). The Court has already found that a genuine issue of material fact exists regarding whether Davis and Christian acted with malice. Therefore, summary judgment will be denied.[5]

---

[4] Defendant also claims that Plaintiff is not entitled to emotional distress damages because she has not established physical injury as a result of the incident. Dkt. No. 68-1 p. 13 (citing H.J. Russell & Co. v. Jones, 250 Ga. App. 28, 30-31 (2001)). Defendant reads Georgia law too narrowly. Emotional distress damages may be appropriate as a result of "malicious, willful, and wanton action" directed at Plaintiff. Id.

[5] Defendants also contest attorney's fees on the sole assumption that the Court will grant summary judgment in this matter. Defendants Lowman and Boyette

⊃ 72A
.ev. 8/82)

## CONCLUSION

Based on the above, it is hereby ordered that:

1. Defendant Christian's Motion for Summary Judgment (Dkt. No. 68) is **GRANTED IN PART AND DENIED IN PART**. In regards to Plaintiff's claims against Defendant Christian in his Official Capacity and Plaintiff's Tortious Interference claims, the motion is **GRANTED**. Regarding all of Plaintiff's other claims, however, Defendant Christian's Motion is **DENIED**.

2. Defendants Davis, Lowman, and Boyette's Motion for Summary Judgment (Dkt. No. 69) is **GRANTED IN PART AND DENIED IN PART**. As to Plaintiff's claims against Defendants Lowman and Boyette, as well as Plaintiff's claim for tortious interference against Davis, summary judgment is hereby **GRANTED**. Regarding all other claims against Defendant Davis, however, summary judgment is **DENIED**.

**SO ORDERED**, this 18th day of November, 2016.

_____
LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

indeed are granted summary judgment and, therefore, Plaintiff is not entitled to attorney's fees as to them. The Court will not, however, grant summary judgment as to Defendants Davis and Christian, as this matter is still pending as to claims against those two defendants.

⊃ 72A
.ev. 8/82)